Mary J. WILSON, Plaintiff-Appellant,

v.

MOTORS INSURANCE CORPORATION, a corporation, Defendant-Respondent.

No. 7926.

Springfield Court of Appeals.

Missouri.

Aug. 21, 1961.

Rehearing Denied Sept. 27, 1961.

Kelsey Norman, Joplin, for plaintiff-appellant.

Roy Coyne, Joplin, for defendant-respondent.

STONE, Presiding Judge.

Plaintiff (to whom, as the widow of Ernest F. Wilson, letters of administration had been refused under V.A.M.S. § 473.090) instituted this action on June 23, 1958, by the filing of her petition in which she sought to reform (by removal of the name of A. C. Scott as an insured) Policy No. 114–81627 issued by defendant, Motors Insurance Corporation, which afforded $50 deductible collision insurance coverage on a 1957 Pontiac automobile purchased by Wilson on October 12, 1957, and being driven by him at the time of an accident on May 16, 1958, in which the automobile was damaged extensively and Wilson was killed. Some twenty months after institution of suit, during which period Scott had intervened and a hurrah's nest of twenty pleadings had been accumulated, the case came on for trial before the court upon plaintiff's first amended petition in two counts (the first for reformation of the policy and the second for a money judgment thereupon), defendant's answer thereto (in substance tendering $429.77 as "the exact amount for which defendant would be liable" and praying that the court determine whether plaintiff or Scott was entitled thereto), and Scott's intervening petition (in substance claiming "one-half of the proceeds" on the theory that Wilson and Scott had been "joint owners" of the insured automobile). The trial court found that Scott had no interest in the insured automobile and dismissed his intervening petition; and, Scott not having appealed, that portion of the judgment stands unassailed and accepted. Moore v. Hoffman, 327 Mo. 852, 867, 39 S.W.2d 339, 344–345(18), 75 A.L.R. 135; Lewis v. Lewis, 354 Mo. 415, 421, 189 S.W. 2d 557, 559(1). On plaintiff's claim, the issues were found for her and judgment was entered against defendant in the sum of $429.77, "the amount of her (plaintiff's) debt and damages." *Plaintiff* appeals.

At the outset of the trial on February 18, 1960, it was stipulated by counsel that "the only issue between * plaintiff and * defendant is the measure of damages, or the extent of the damages to the automobile." In her first amended petition on which she proceeded to trial, plaintiff's theory as to the proper measure of damages was that, "under the terms of said policy, she is entitled to recover * * * the cost of repairing the damage to said car, or the sum of $600, less the sum of $50," the insured's retention. Notwithstanding this pleaded theory, *plaintiff* offered no evidence as to the cost of repairing the insured automobile but, *without objection,* introduced opinion evidence that the reasonable market value of the insured automobile immediately before the accident was $2,000 and immediately thereafter was $500. However, *defendant* introduced a repair estimate showing that the cost of repairing the insured automobile would have been $936.21.

In the answer on which it proceeded to trial, defendant neither divulged its theory as to the proper measure of damages nor revealed how it had determined that $429.77 was (so the answer asserted) "the exact amount for which defendant would be liable." However, as we piece together defendant's theory from the record of what occurred at the trial and thereafter, it seems to be that defendant's liability is limited to one-half of the cost of repairing the insured automobile, less the $50 retention. This theory is predicated (a) on the policy provision that "the limit of the company's (defendant's) liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and

quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations" (such limit of liability being "Actual Cash Value Less $50 Deductible") and (b) on the further policy provision that "if the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Of course, the latter policy provision would be inapplicable in the instant case unless, when the automobile covered by the policy was damaged on May 16, 1958, the insured also had other insurance against the same loss. The first suggestion that there was such other insurance came at the close of plaintiff's evidence, when defendant's attorney, in a statement obviously directed to opposing counsel, said: "There is a little further matter you ought to put in that stipulation. There were two policies of insurance on this car, and both of them were * * * $429.77." After vigorous and repeated objections by plaintiff's counsel that, under the pleadings, there was no such issue in the case, defendant's attorney made this request (quoted in its entirety): "At this time, I ask to amend my answer by stating that it is just half of the insurance." There was no ruling on this request but it evoked (and understandably so from the record) the court's querulous comment that: "I can't tell exactly what this is. We have discussed this for some time, and yet I still don't know what it is all about." Following further discussion, the court sustained the objection of plaintiff's counsel to injecting the unpleaded issue of "other insurance" into the case.

Defendant's only witness was a special agent who identified the repair estimate of $936.21 then received in evidence. The matter of "other insurance" next crept into the case during the subsequent cross-examination of intervener Scott when he volunteered that "there was another in-surance policy." Plaintiff's counsel immediately interposed an appropriate motion to strike this statement, which the court sustained. But, defendant's attorney shortly returned to the same subject again when he asked Scott, "you knew that there was a second policy in this case?" In response to plaintiff's objection, the court stated, "I don't believe it is admissible." Defendant's second request to amend its answer then came in this language: "I will ask to amend my answer to set up that there is a second insurance policy and it was received by Mrs. Wilson (plaintiff)." Although this request was unruled (as the previous one had been), the court finally was persuaded, after further objection by plaintiff, to say that "I will permit the testimony and if it is not material and does not apply it will be stricken out." Acting on this ruling, defendant's attorney asked, "There was two policies?" and Scott answered "There was one on the Hardware Mutual Insurance Company and GMAC." Thereafter, without showing any attempt to procure production of such policy or to account for its non-production, defendant's attorney was permitted, over plaintiff's objection, to inquire "And that one of the Hardware Mutual was exactly the same amount as the other?" and Scott was permitted to answer "It was." Testimony by Scott then followed to the effect that plaintiff had admitted to him that she had "received" a check from Hardware Mutual; but, as with the policy, there was no showing of any effort to procure production of the check or to account for its non-production. And, references to this instrument were confined to "that check" or to "this check" or to "the Hardware Mutual check" without even so much as incompetent testimony or hearsay evidence as to the date of the check, its amount, the basis on which that amount had been determined, or the purpose for which the check had been issued.

Almost two months after the evidence had been heard and the case had been taken under advisement, to-wit, on April 14, 1960, plaintiff filed, by leave of court, a

second amended petition in which, for the first time, she pleaded her alleged right to recover $1,500 as the difference between the reasonable market value of the insured automobile immediately before the accident and immediately thereafter. On April 18, 1960, defendant filed, by leave subsequently granted on April 25, its answer to plaintiff's second amended petition in which, for the first time, it pleaded the hereinbefore-quoted provision of the policy in suit (i. e., "if the insured has other insurance against a loss covered by this policy, etc."), coupled with nothing more than the bare, naked, unadorned, unexplained and unelaborated averment "that the Hardware Mutual Insurance Company has paid to plaintiff, or the estate, the sum of $429.77" and followed by a retender of plaintiff's draft for $429.77. The judgment for plaintiff in the sum of $429.77 was entered on April 25, 1960. Although neither the transcript on appeal nor defendant's brief enlightens us as to how defendant arrived at $429.77 as "the exact amount" of its liability and we are unable to reach that precise figure by mathematical computation,[1] it is perfectly plain that the trial court finally adopted and followed defendant's theory. For, as we read the record and briefs, defendant concedes that the reasonable cost of repairing the damage to the insured automobile was $936.21 and undertakes to support the judgment for $429.77 on the sole ground that (in the language of defendant's brief) "there was ample evidence * * * to show the existence of another policy in the Hardware Mutual Insurance Company and the payment from the Hardware Mutual in the sum of $429.77."

■ However, as plaintiff here complains, limitation of her recovery to $429.77 cannot be justified on that theory. In the first place, there was no such defense or issue in the case when it was tried. In our Missouri practice, the office of the pleadings is to present, define and isolate the controverted issues that the trial court and the parties may be advised of those issues and that trial thereof on the merits may be expedited. Johnson v. Flex-O-Lite Mfg. Corp., Mo., 314 S.W.2d 75, 79(3); Linders v. Linders, 356 Mo. 852, 855, 204 S.W.2d 229, 230(2); Gover v. Cleveland, Mo.App., 299 S.W.2d 239, 242(5); Cook v. Bolin, Mo.App., 296 S.W.2d 181, 184(2). "The aim is to determine what are the controversial issues before the trial begins, and limit the·trial to them." Gerber v. Schutte Inv. Co., 354 Mo. 1246, 1250, 194 S.W.2d 25, 28. Thus, the pleadings continue to be of the greatest utility in defining the issues of a case [Gerber v. Schutte Inv. Co., supra, 354 Mo. loc. cit. 1251, 194 S.W.2d loc. cit. 28; Kesinger v. Burtrum, Mo.App., 295 S.W.2d 605, 608; Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, 38; Dugan v. Trout, Mo.App., 271 S.W.2d 593, 597] and are not to be employed to camouflage or conceal issues or to entrap or ambush the adverse party. Gerber v. Schutte Inv. Co., supra, 354 Mo. loc. cit. 1251, 194 S.W.2d loc. cit. 28; Krummenacher v. Western Auto Supply Co., 358 Mo. 757, 761, 217 S.W.2d·473, 475; King v. Guy, Mo.App., 297 S.W.2d 617, 624; Hilderbrand v. Anderson, Mo.App., 270 S.W.2d 406, 409.

■ Instant defendant's reliance upon the policy provision belatedly included two months after trial in its answer to plaintiff's second amended petition (i. e., "if the insured has other insurance against a loss covered by this policy, etc.") was an affirmative defense, that is, a defense resting on facts not necessary to support plaintiff's case. Northrup v. Mississippi Valley Ins. Co., 47 Mo. 435, 444(4); Kersey v. Garton, 77 Mo. 645, 647(3); Hudson v. Wabash W. Ry. Co., 101 Mo. 13, 30(4), 14 S.W.

1. If the tender were computed on the basis of one-half of the repair estimate of $936.21 less $50 (i. e., one-half of $886.-21), it would have been $443.11; and if it were computed on the basis of deducting the $50 retention from *each half* of the repair bill of $936.21, it would have been $418.11 (i. e., one-half of $936.21, or $468.11, less $50).

15, 19; Scudder v. Atwood, 55 Mo.App. 512, 521; Guinotte v. Ridge, 46 Mo.App. 254, 261. If defendant intended to rely upon that policy provision and a payment alleged to have been made by another insurer, such affirmative defense should have been pleaded in the answer upon which defendant proceeded to trial. Civil Rule 55.10, V.A.M.R.; V.A.M.S. § 509.090. With no suggestion thereof in that answer, such affirmative defense was not available to defendant. Dugan v. Trout, supra, 271 S.W. 2d loc. cit. 597(6); Grapette Co. v. Grapette Bottling Co., supra, 286 S.W.2d loc. cit. 38. As has been pointed out, plaintiff's appropriate objections to defendant's efforts to drag this unpleaded defense into the trial were thrice sustained (and properly so), before the trial court was overpersuaded to hear anyway what persistent counsel had to offer on this subject. But, the insistence of counsel did not change or broaden the pleaded issues and did not render admissible that which clearly was inadmissible under the answer. The court's fourth ruling should have been the same as his previous three, and evidence on this unpleaded affirmative defense again should have been rejected.

◼ In the second place, intervener Scott should not have been permitted to testify, over plaintiff's objections, concerning the content and coverage of another policy alleged to have afforded insurance against the same loss and concerning a check alleged to have been issued under that policy in partial payment of such loss, when there had been no showing of any attempt to procure production of such policy and check and no effort to account for their nonproduction. Miller v. John Hancock Mut. Life Ins. Co., Mo.App., 155 S.W.2d 324, 326(2); 29A Am.Jur., Insurance, § 1877, p. 938.

◼ Finally, wholly aside from the state of the pleadings or the admissibility of the testimony offered, the inescapable truth of the matter is that defendant failed to prove his unpleaded affirmative defense

anyway. Even after overpersuading the trial court to permit him to cross-examine intervener Scott concerning "other insurance," defendant's attorney sought and elicited nothing more than vague, ambiguous and meaningless generalities, as heretofore noted in our review of the record. E. g., the "question," "There was two policies?" and Scott's answer, "There was one on the Hardware Mutual Insurance Company and GMAC." Although Scott said that plaintiff had admitted in a telephone conversation that she had "received" a check, it does not appear that Scott even claimed to have seen the check and certainly his testimony disclosed no information concerning its date, amount, basis of computation, or purpose of issuance. In fact, none of these matters were so much as mentioned either in any question propounded to Scott or in any answer given by him. Of course, the statements of defendant's attorney, not sworn as a witness, did not prove themselves or constitute evidence. Engle v. Ferrell, 126 Mo.App. 577, 581, 105 S.W. 23, 24(5); State ex rel. Lesh v. Indiana Mfrs. of Dairy Products, 198 Ind. 288, 153 N.E. 499, 503(7); Pennsylvania Knitting Mills Corp. v. Bayard, 287 Pa. 216, 134 A. 397, 400(9); Commonwealth Life Ins. Co. v. Reilly, 208 Ala. 313, 94 So. 294(5). Nor may we determine the case on the basis of extraneous statements in defendant's brief, not supported by the transcript and not conceded by adversary counsel. Lubrication Engineers, Inc. v. Parkinson, Mo.App., 341 S.W.2d 876, 879(9); E. C. Robinson Lumber Co. v. Lowrey, Mo.App., 276 S.W. 2d 636, 644(21). Defendant's argument here that plaintiff did not take the stand to deny that she had received a check from Hardware Mutual misses the mark, for the burden rested upon defendant not only to plead its affirmative defense [Civil Rule 55.10, V.A.M.R.; V.A.M.S. § 509.090], but also to prove that defense. Smith v. Ohio Millers' Mut. Fire Ins. Co., 325 Mo. 51, 63, 26 S.W.2d 962, 966(6); Snead v. Union Life Ins. Co., Mo.App., 340 S.W.2d 184, 187(1); Pfingsten v. Franklin Life Ins.

Co., Mo., 330 S.W.2d 806, 813(1); Terry v. Metropolitan Life Ins. Co., Mo.App., 206 S.W.2d 724, 728(6); Menzenworth v. Metropolitan Life Ins. Co., Mo.App., 249 S.W. 113, 115(2). This, it did not do. And, for all of the reasons hereinbefore stated, the judgment for $429.77 cannot stand on the record which, of course, we must take as it comes to us. Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); Prentice v. Williams, Mo.App., 324 S.W.2d 466, 469(2).

 However, it does not follow that plaintiff is entitled, as she here insists, to a directed judgment for $1,450 on the theory that (as initially pleaded in her second amended petition almost two months after trial) she should recover the difference between the reasonable market value of the insured automobile immediately before the accident and immediately thereafter (less the $50 retention), as shown by the uncontradicted testimony of her witnesses. True, that is the proper measure of damages in an action, *ex delicto,* for injury to personalty. Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 533, 66 S.W.2d 903, 910(23); Hall v. Clark, Mo., 298 S.W.2d 344, 350(13); Thomson v. Bast, Mo.App., 309 S.W.2d 667, 670(5). But, this is an action, *ex contractu,* in which plaintiff seeks to recover upon a policy contract of insurance. When not invalidated by statute, contractual provisions (such as those hereinbefore quoted from the policy in suit) fixing the measure of damages and limiting the insurer's liability are controlling and enforceable according to their terms. Williams v. Farm Bureau Mutual Ins. Co. of Mo., Mo.App., 299 S.W.2d 587, 588(1), and cases there collected in footnote 2. Furthermore, the burden of proof rested upon plaintiff to establish her damages [Aron v. Resz, Mo.App., 343 S.W.2d 81, 82(1)]; and, *even if* the proper measure of damages were the difference in reasonable market value, the court, as trier of the facts, was not required to accept at face value plaintiff's opinion evidence as to reasonable market value but might have disbelieved such evidence even though it was uncontradicted. State ex rel. Rice v. Public Service Commission, 359 Mo. 109, 116–117, 220 S.W.2d 61, 65(10); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 787(5); Adam Hat Stores v. Kansas City, Mo., 316 S.W.2d 594, 598(3); Aron v. Resz, supra, 343 S.W.2d loc. cit. 82, 83.

The judgment for plaintiff in the sum of $429.77 is set aside and the cause is remanded for retrial, with leave to both parties (if so advised) to amend their respective pleadings prior thereto.

McDOWELL and RUARK, JJ., concur.