Maggie NICHOLS, Respondent,

v.

MAMA STUFFEATI'S, Defendant,

American Motorist Insurance
Company, Appellant,

Treasurer of the State of Missouri,
Custodian of the Second Injury
Fund, Respondent.

Nos. WD 53514, WD 53518.

Missouri Court of Appeals,
Western District.

Aug. 26, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 31, 1998.

Application for Transfer Denied
May 26, 1998.

Thomas Clinkenbeard, Kansas City, for Appellant.

Michael A. Knepper, McIntosh, Knepper, Hobson & Healy, Kansas City, for Respondent Maggie Nichols.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Michael C. Kirkham, Asst. Atty. Gen., Kansas City, for Respondent Treasurer of the State of Missouri.

Before ULRICH, C.J., P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

American Motorists Insurance Company (AMI), workers' compensation insurer of Mama Stuffeati's Restaurant, appeals the decision of the Labor and Industrial Relations Commission finding that it had issued a workers' compensation policy of insurance to the restaurant that was in existence when Maggie Nichols, an employee of the restaurant, was injured and affirming the award of the Administrative Law Judge awarding Ms. Nichols $2,477.30 as a Temporary Total Disability Award based in part on her weekly average wages of $371.25. AMI claims the Commission erred when it: (1) found that the workers' compensation policy issued by it to Mama Stuffeati's had not been cancelled before Ms. Nichols's injury and claim; (2) interpreted section 287.090.3 as being analogous to section 287.090.2; and (3) allowed Ms. Nichols to amend her claim to assert additional injury and disability for additional compensation during trial. The decision of the Commission is affirmed in part and reversed in part. The case is remanded with directions.

## FACTS

Maggie Nichols was injured June 8, 1991, when she attempted to catch a boxed roll of plastic wrap weighing approximately twenty-five pounds as it fell from a shelf in the kitchen at Mama Stuffeati's where she was employed. The falling roll of plastic wrap sliced the fifth digit of her left hand and hyper-extended her hand backwards from the wrist.

Ms. Nichols's injury occurred in the presence of her supervisor from whom she requested medical care. The supervisor told her to obtain medical treatment at Kansas University Medical Center. Ms. Nichols complied and received medical attention. The Medical Center verified that the employer and employee were "covered" by insurance before providing medical treatment.

Ms. Nichols told her supervisor that additional surgery was required to repair a damaged nerve in her hand. The supervisor stated that Mama Stuffeati's would continue to furnish medical care for the injury Ms. Nichols suffered. Ms. Nichols lost two weeks work as a result of the initial accident. After corrective surgery was performed to her hand, she was unable to work for a period of eight additional weeks.

Medical expenses of $12,354.30 were incurred by Ms. Nichols. Mama Stuffeati's did not pay any of those expenses.

Ms. Nichols's claim for workers' compensation was conducted before an Administrative Law Judge on November 14, 1995. The hearing before the ALJ included Ms. Nichols, represented by counsel, the Second Injury Fund, and AMI, the employer's alleged insurance carrier. The employer, having ceased to operate in 1992, did not participate. During the hearing, AMI admitted that it had issued a workers' compensation insurance policy to Mama Stuffeati's in 1989. AMI contended, however, that the policy had been cancelled on or about December 24, 1990, before Ms. Nichols's accident. Because AMI had destroyed the records pertaining to the policy issued to the employer in Decem-

ber of 1992, extrinsic evidence was examined by the ALJ to ascertain whether the policy was cancelled, and if it was, when it was cancelled. The ALJ determined that the policy had not been cancelled before the date of Ms. Nichols's injury. The ALJ awarded Ms. Nichols a Temporary Total Disability Award in the amount of $2,477.30 based in part on her average weekly wage of $371.25. AMI appealed the decision to the Labor and Industrial Commission. The Commission affirmed the ALJ's decision. This appeal followed.

## STANDARD OF REVIEW

The Commission's decision will be overturned only if the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission did not support the award, or sufficient competent and substantial evidence was not presented to support the award. § 287.495, RSMo 1994; *Johnson v. Denton Constr. Co.,* 911 S.W.2d 286, 288 (Mo. banc 1995). The Commission's determinations involving witness credibility and the weight ascribed to that testimony are not reviewed. *Id.* The entire record is viewed in the light most favorable to the Commission's findings. *Wright v. Sports Associated, Inc.,* 887 S.W.2d 596, 598 (Mo. banc 1994).

## I. SUFFICIENT EVIDENCE EXISTED FOR THE COMMISSION TO FIND THAT THE WORKERS' COMPENSATION POLICY ISSUED TO EMPLOYER HAD NOT BEEN CANCELLED BEFORE EMPLOYEE WAS INJURED

■ AMI's first two points of error concern the Commission's determination that

cancellation of the policy was not sufficiently proven.[1] Both points focus on the reasoning of the Commission that AMI did not sufficiently prove it cancelled its workers' compensation insurance policy insuring Mama Stuffeati's before Ms. Nichols's June, 1991 accident.

AMI begins its argument alleging that Respondents had the burden of proving insurance coverage by AMI had existed and that they failed to make a prima facie showing. AMI's contention on this point is misplaced for two reasons. First, it did not assert in its *Points Relied On* that any error was made by the Commission in concluding that an insurance contract had existed between it and Mama Stuffeati's. Instead, AMI only claims error in the Commission's finding regarding the issue of cancellation. Secondly, AMI admitted at the hearing before the ALJ that an insurance contract was issued in 1989 to Mama Stuffeati's:

Q: [W]hen did the relationship between Mama Stuffeati's and American Motorist, for purposes of Workers' Compensation coverage in the State of Missouri, first take place?

A: 1989.

Q: Did this relationship continue up to a date certain?

A: Yes, it ceased January—December 24th, 1990.

Q: And for what reason did the relationship come to an end?

A: Cancellation for nonpayment of premium.

1. AMI's second point simply claims that the Commission erred in interpretation of section 287.090.3. AMI, however, does not identify *what* the erroneous interpretation was in its *Point Relied On* or in the argument portion of the brief. *Points Relied On* must specify "wherein and why" the ruling was erroneous. Rule 84.04; *Doe v. Roman Catholic Diocese,* 862 S.W.2d 338, 342 (Mo.1993). The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review. *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). Appellant omitted the "wherein" aspect of its argument in both the *Points*

*Relied On* and in the supporting argument portion of its brief. Having read the transcript of the trial together with the brief of Respondents, the court discerns that Respondents understood AMI's claim. The court will, therefore, review AMI's second point *sub gratis* with the understanding that AMI is claiming error in the Commission's conclusion that if a WC–75 cancellation notice is not sent to the Division of Workers' Compensation before cancellation by a carrier of a workers' compensation policy either the cancellation will not be effective, or the omission of the WC–75 notice will be evidence that the policy was cancelled. *See Brown v. Hamid,* 856 S.W.2d 51, 53 (Mo. banc 1993).

AMI further restated this admission as a fact in its statement of facts: "American Motorists Insurance Company had, in fact, written workers' compensation coverage for Mama Stuffeati's Restaurant, commencing in 1989...." This fact is also bolstered by filings made by AMI. AMI filed a Certificate of Insurer, form WC–75, with the Division of Workers' Compensation that renewed coverage for Mama Stuffeati's from November 1, 1989, through November 1, 1990. AMI also filed another WC–75 form on October 8, 1990, that renewed the coverage again from November 1, 1990, through November 1, 1991. Whether an insurance contract was entered into between AMI and Mama Stuffeati's regarding workers' compensation insurance was never contested by AMI at any level of the proceedings. AMI has conceded that a valid insurance contract was entered into in 1989 with Mama Stuffeati's. The only issue contested regarding the insurance contract was not whether one ever existed but when the contract terminated.[2]

AMI, as insurer, has the burden of showing, as an affirmative defense, the cancellation of the insurance contract before the date of the accident. *Dyche v. Bostian,* 361 Mo. 122, 233 S.W.2d 721 (1950). Whether an insurance policy has been cancelled is a question of fact. *Smith v. Ohio Millers Mut. Fire Ins. Co.,* 325 Mo. 51, 26 S.W.2d 962 (1930); *Walters Auto Body Shop, Inc. v. Farmers Ins. Co.,* 829 S.W.2d 637, 640 (Mo. App.1992). Cancellation of an insurance policy requires "strict compliance with the conditions provided in the policy for cancellation." *Schroeder v. Horack,* 592 S.W.2d 742, 748 (Mo.1979); *MFA Mut. Ins. Co. v. Southwest Baptist College, Inc.,* 381 S.W.2d 797, 801 (Mo.1964).

The terms of a document must generally be proven by production of the original of that document. *Redpath v. Missouri Highway and Transp. Comm'n,* 783 S.W.2d 429, 431 (Mo.App.W.D.1989). Secondary evidence may be admitted if the offering party demonstrates that the primary evidence is lost or destroyed, is outside the jurisdiction, is in the possession or control of an adversary, or is otherwise unavailable or inaccessible. *Scrivner v. American Car & Foundry Co.,* 330 Mo. 408, 430, 50 S.W.2d 1001, 1009 (1932); *State ex rel. Barkwell v. Trimble,* 309 Mo. 546, 274 S.W. 683 (1925); *Interstate Distrib., Inc. v. Freeman,* 904 S.W.2d 481, 484 (Mo.App.1995); 2 McCormick on Evidence §§ 229–240 (4th ed.1992); Fed. R. Evid 1004. Extrinsic evidence may not be offered when the original has been destroyed, lost, or has become unavailable through the serious fault of the party offering the secondary evidence. *State v. Fontana,* 589 S.W.2d 639 (Mo.App.1979). A proponent of the terms and provisions of a lost insurance policy must prove those terms at issue by "clear and convincing" evidence. *Welsh v. Veasley,* 286 Mo. 93, 227 S.W. 58 (1920); *Transamerica Ins. Co. v. Pennsylvania Nat'l Ins. Companies,* 908 S.W.2d 173, 175 (Mo.App.1995); *Whitenton v. Whitenton,* 659 S.W.2d 542, 547 (Mo.App.1983); *Brunswick Corp. v. Briscoe,* 523 S.W.2d 115, 123 (Mo.App.1975); *State ex rel. Dryden v. Thym,* 282 S.W.2d 178, 187 (Mo.App.1955). *See also Monsanto Co. v. Aetna Cas. & Sur. Co.,* 1993 WL 563244 *3 (Del.Super.Dec. 21, 1993)(interpreting Missouri law as requiring "clear and convincing" standard of proof for lost insurance contracts).

The insurance contract was never introduced as evidence by either party. Instead, AMI offered an example of its typical insurance contract issued in Missouri. It contended that the specific terms of cancellation contained in the Mama Stuffeati's policy were identical to this form insurance policy introduced by AMI at the hearing. AMI further contended that the terms of cancellation only required that notification be mailed to, as opposed to being received by, Mama Stuffeati's. AMI did not offer any direct proof of any mailing to Mama Stuffeati's. AMI offered a copy of the purported notice of cancellation that had been sent to the insurance agency that transacted the sale of the policy to Mama Stuffeati's.

**2.** AMI does not dispute that its insurance coverage would have covered Ms. Nichols's injury if it were in effect at the time of the injury. There-fore, the actual terms of policy regarding coverage are not at issue.

AMI's burden in proving that the policy had been cancelled is significant. First, it was required to prove by clear and convincing evidence that the provision within the policy to effect cancellation required only a mailing directed to Mama Stuffeati's as it claimed. AMI offered no copy of the insurance contract. AMI instead presented a form that it asserted is used in Missouri to provide notice of cancellation of coverage to an insured. The form, absent corroborating evidence, is not clear and convincing evidence of the terms at issue in the destroyed insurance contract.

AMI, for assumedly legitimate reasons, claims to have destroyed its own records relating to the issuance of the policy including records of cancellation.[3] Insurance companies assume a calculated risk that the documents destroyed through systematic document destruction policies will not be needed later. AMI apparently had a policy of destroying files after two years of a policy cancellation. Ms. Nichols's file was destroyed in 1992 despite Ms. Nichols having made her first claim for compensation in 1991 and despite AMI having received notices of the claim from the Division of Workers' Compensation from December 1991 through September 1992. The party that asserts cancellation of a policy proven to have been issued has the burden of proving cancellation. Having instituted its own document retention policy that caused the destruction of its insurance policy records and possibly its ability to prove cancellation, AMI will not be heard to complain about that inability.

Secondly, assuming *arguendo* that the specific cancellation terms were proven by clear and convincing evidence, insurance contracts are construed strictly against the insurer and liberally in favor of the insured. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo.1992); *English v. Old Am. Ins. Co.,* 426 S.W.2d 33, 36 (Mo.1968). Even further

assuming that the act effecting cancellation is as AMI contends, mailing the notice of cancellation to the insured, AMI did not produce the copy of the notice of cancellation allegedly mailed to Mama Stuffeati's. Instead, it offered a copy of a "courtesy notice" sent to AMI's agent who wrote the policy. The "courtesy notice" was alleged by AMI to be the identical copy of the actual notice of cancellation sent to Mama Stuffeati's. AMI testified that because the agent had received a notice of cancellation, it believed that it had mailed a cancellation notice to Mama Stuffeati's.

■ Proof of mailing under Missouri law requires proof that the letter was put in an envelope with sufficient postage with the correct address of the addressee recipient and was placed in the mail. *Lake St. Louis Community Ass'n v. Ringwald,* 652 S.W.2d 158, 160 (Mo.App.1983); *Hood v. M.F.A. Mut. Ins. Co.,* 379 S.W.2d 806, 809 (Mo.App. 1964). AMI offered no testimony or documentary proof that any of those elements were met. AMI testified that it is the normal procedure to send a courtesy copy of the notice of cancellation to the agent when a cancellation notice is mailed to an insured. AMI did not produce a signed receipt for the registered or certified mail. Ultimately AMI was unable to produce any direct evidence of the mailing. The evidence was insufficient to raise the presumption that a cancellation notice had been mailed to Mama Stuffeati's.

Finally, the Commission was entitled to weigh AMI's evidence of cancellation against AMI's failure to file a Certificate of Insurer, form WC–75, notifying the Division of Workers' Compensation that Mama Stuffeati's policy had been cancelled. A WC–75 form is required under Missouri law when insurance coverages are changed or cancelled. § 287.090.2. AMI admitted that sending a WC–75 form to the Division would have been a normal part of the cancellation process.[4]

---

**3.** Insurance companies dispose of insurance policies and related records pursuant to established company document retention policies designed to furnish needed storage space for active files and to discard old papers thought to be no longer necessary. *Township of Haddon v. Royal Ins. Co. of Am.,* 1996 WL 549301, at * 2 (D.N.J.

Sept.19, 1996). However, "courts have noted the irony inherent in penalizing an insured when both he and his carrier can, understandably, no longer produce a policy which may be ten, twenty, or even thirty years old." *Id.*

**4.** Because the absence of a contemporaneous WC–75 filing was used as evidence to support the

Sufficient evidence was presented supporting the Commission's findings that the workers' compensation policy issued to the employer was in effect at the time Ms. Nichols sustained injury to her wrist and that AMI did not sufficiently prove its affirmative defense of cancellation.

Points 1 and 2 are denied.

## II. EMPLOYEE'S AMENDMENT OF HER CLAIM DURING TRIAL UNFAIRLY SURPRISED AND PREJUDICED APPELLANT

■ AMI claims that amendment to Ms. Nichols's claim during trial over its objection to claim additional disability because of different bodily injuries than those asserted in the pending claim was unfair and surprised and prejudiced it. Ms. Nichols was permitted during the hearing while she was presenting evidence to amend her pleadings to claim injury and disability to her left ankle, an entirely new claim.

■ Although the Supreme Court Rules do not apply in proceedings before the Commission, the rationale for many of them exists. Under Rule 55.33, the decision to allow amendments to pleadings is within the sound discretion of the trial court. *Lester v. Sayles*, 850 S.W.2d 858, 869 (Mo. banc 1993). Pleadings should not be amended during trial if the party adversely affected will not be afforded a reasonable opportunity to rejoin the allegations of the amended pleading. "The real test is whether additional proof or additional witnesses for which a party is not prepared would be required to meet the new allegations...." *Wallick v. First State Bank of Farmington*, 532 S.W.2d 520, 523 (Mo.App.1976); *Derboven v. Stockton*, 490 S.W.2d 301 (Mo.App.1972).

The additional claim Ms. Nichols was permitted to file during the hearing unfairly surprised and unduly prejudiced AMI. Ms. Nichols's claim prior to trial contained no allegation of injury to the lower extremity. AMI did not seek, based on her initial claim, to have Ms. Nichols examined by a physician

nor did it seek to present other information as to the nature and extent of Ms. Nichols's newly alleged disability. Ms. Nichols sought to amend her claim during the course of trial to include an entirely new allegation of permanent disability to her left ankle. Until that time, the only allegation of disability made by Ms. Nichols had been to her left hand. Dr. Gary Baker, Ms. Nichols' treating physician, was deposed on October 31, 1995, fourteen days before trial. During the deposition, Ms. Nichols's attorney never inquired about any injury to his client's ankle. All of Ms. Nichols's counsel's questions were confined to the left hand. The transcript reveals no reference to any problems related to Ms. Nichols's left ankle. Dr. Baker's opinion regarding Ms. Nichols's claimed disability was attributed solely to her left hand. Understandably, AMI did not cross-examine Dr. Baker regarding any other areas of Ms. Nichols's body, including her lower extremities or her left ankle.

When the hearing was conducted, Ms. Nichols's testified first about the claims regarding her left hand. Her counsel during the hearing then moved to amend her claim to include injury to her left ankle and resultant disability. AMI objected vigorously. Ms. Nichols's attorney attempted to justify the amendment as not being prejudicial and not causing unfair surprise stating, "The doctor was asked ... did that surgery include a harvest of the donor nerve from her left ankle, and he replied that it did. And he went ahead to describe the borrowing of that nerve. It is also treated in the records. And so I think that that is not something that is any surprise to the defense in this matter."

Merely because an ankle was used to harvest a nerve would not, in and of itself, automatically demonstrate to AMI that it, too, could or would be another claim of disability by Ms. Nichols. AMI was provided notice by the filed claim and by Dr. Baker's deposition testimony that claimed injury was isolated to Ms. Nichols's hand. To allow the claimant to amend her pleadings at the hear-

Commission's conclusion that a cancellation notice had not been mailed to Mama Stuffeati's, the court does not reach AMI's second point of error

directed at the Commission's conclusion that cancellation of insurance does not occur until a valid WC–75 form is filed.

ing would propagate non-disclosure until the hearing. The ALJ's permitting Ms. Nichols to add a second claim asserting injury to her left ankle and resulting disability was error.

Because the ALJ did not apportion disability between Ms. Nichols's left wrist and her left ankle, no means of properly remedying the prejudice suffered by AMI is available except reversal and remand. The case is remanded to the Commission for referral to an ALJ to determine the extent of disability, if any, from the injury suffered to claimant's hand and to award compensation for that injury only.

All concur.