Connie LORENZ, Employee–Respondent,

v.

SWEETHEART CUP CO., INC., Employer–Respondent,

and

Missouri State Treasurer as Custodian of the Second Injury Fund, Appellant.

No. 23896.

Missouri Court of Appeals, Southern District, Division One.

Oct. 1, 2001.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 22, 2001.

Application for Transfer Denied Dec. 18, 2001.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shari Lynn Lockhart, Cara Lee Harris, Asst. Attys. Gen., Springfield, for appellant.

Paul F. Reichert, Springfield, for respondent Lorenz.

Mary O. Thompson, Field, Gentry & Benjamin, P.C., Springfield, for respondent Sweetheart Cup.

PARRISH, Presiding Judge.

■■■ The state treasurer, as custodian of the Second Injury Fund (the fund), appeals a final award of the Labor and Industrial Relations Commission (the commission) to Connie Lorenz (claimant) for medical and permanent disability benefits. This court affirms.

On appeal of the Commission's final award, we only review questions of law. § 287.495.1, RSMo 1986.[1] We will not disturb the award unless it is unsupported by substantial evidence or clearly contrary to the weight of the evidence. *Sellers v. Trans World Airlines, Inc.,* 752 S.W.2d 413, 415 (Mo.App.1988). Credibility, resolution of evidentiary conflicts, weight of evidence, and factual inferences are all issues vested in the Commission. *Tester v. Autco Distributing, Inc.,* 749 S.W.2d 21, 22 (Mo.App. 1988).

*Prater v. Thorngate, Ltd.,* 761 S.W.2d 226, 228 (Mo.App.1988).

In early 1990 claimant experienced numbness and pain in her thumbs and arms. The symptoms gradually progressed up her arms and shoulders. Claimant was diagnosed with bilateral carpal tunnel syndrome; bilateral epicondylitis, elbows; bilateral bursitis, shoulders; and impingement syndrome in left and right shoulders. She underwent six surgeries:

August 1991—left carpal tunnel release

September 1991—right carpal tunnel release

March 1992—right tennis elbow release

April 1992—left tennis elbow release

January 1993—right shoulder arthroscopic acromioplasty

February 1993—left shoulder arthroscopic acromioplasty

Claimant returned to work after each of the 1991 and 1992 surgeries without restrictions. She returned after the 1993 surgeries with permanent restrictions. She was eventually discharged due to restrictions on what she could do.

Claimant filed three claims, numbers 91–047792, 92–188947 and 92–188948. The first was filed October 21, 1993. The second and third were filed July 14, 1995. The claims were directed to occupational diseases described as follows:

1. Claim No. 91–047792 filed October 21, 1993, alleged the "Parts of Body Injured" were "[b]oth upper extremities and both shoulders." It stated the date of the "onset of occupational disease disability" was "04/20/91."

2. Claim No. 92–188947 filed July 14, 1995, alleged the "Parts of Body Injured" were "[b]oth upper extremities and both shoulders." It stated the date of the "occupational disease" was "11/12/92, last exposure with surgery on 01/21/93 & 02/25/93."

3. Claim No. 92–188948 filed July 14, 1995, alleged the "Parts of Body Injured" were "[b]oth upper extremities, including but not limited to, hands, elbows & shoulders." It stated the date of the "occupational disease" was "03/16/92, last exposure with surgery on 03/17/92 & 03/14/92."

Each included a claim against the fund.

The "cause" of injury each claim alleged was identical:

[Claimant] within the course and scope of her duties as a packer was required to bend 1,200 to 1,400 pieces of heavy cardboard during each work day to make dividers in connection with packing pa-

---

1. The statement of § 287.495.1 relative to appellate review is unchanged in RSMo 2000, the current revision of Missouri's statutes.

per cups. [Claimant] had been engaged in this type of work for a period of 5 years and during the last 6 months the cardboard blanks she was required to bend were not properly creased by the manufacturer and, thus, required [claimant] to exert great force with both hands and arms to bend the dividers into the proper shape. These working conditions caused [claimant] to develop bilateral carpal tunnel syndrome that first became disabling on April 20, 1991. [Claimant] reported the condition to her immediate supervisor, Roy Wolfenberger in compliance with § 287.420.

Claimant sought compensation for medical care and permanent and total disability in each claim. The claims were consolidated for purposes of hearing before the administrative law judge. On the day of the hearing, March 11, 1999, the attorney for claimant's employer, Sweetheart Cup, Inc. (employer), stated she anticipated testimony being offered on behalf of claimant that there had been aggravation of low back and psychiatric conditions because of injuries or work activities. Employer objected to such testimony contending it was an attempt to amend the claim. The administrative law judge inquired about when employer's attorney became aware of a claim of aggravation of pre-existing back and psychological problems. Employer's attorney answered that she became aware that there might be evidence of aggravation of pre-existing back and psychological problems when she received a medical report from Dr. Norbert Belz in January 1998.

Claimant's attorney told the administrative law judge the first time he was told by a medical practitioner that prior back and psychological conditions were aggravated by the injuries was in January 1998. Claimant's attorney said he received the report then; that he provided it to employer's attorney and the fund "at or near the same time."

The objection to testimony about aggravated back and psychiatric conditions was overruled. Claimant was allowed to amend her claims accordingly.[2]

The commission ultimately entered the following findings and awards:

*Claim 91–047792:* "[W]e find that claimant's pre-existing disabilities combine with the disability to her wrists to create a greater sum of disability. We agree with the administrative law judge's finding that the primary injury resulted in 15% permanent partial disability to each wrist with a 10% loading factor or 15% permanent partial disability to the body as a whole and adopt her findings and analysis on that issue. The combination of the primary disability with the preexisting disability create an additional 5% permanent partial disability to the body as a whole and the Second Injury Fund is responsible for 20 weeks of compensation or $3,975.00."

*Claim 92–188948:* "Claimant's pre-existing mental and physical disabilities also combine in injury number 92–188948 to create a greater sum of disability. We adopt the administrative law judge's findings on assessing the primary injury to her elbows and agree that claimant sustained 18% permanent partial disability to the body as a whole. The disability to her wrists total 15%

---

**2.** The administrative law judge permitted the evidence stating that if she later decided the evidence should not have been admitted, she would not consider it and so state in her award. In the administrative law judge's award she refused to allow the amendment stating that if the amendment were permitted, the fund "would be unfairly prejudiced" because it had not had sufficient time to prepare a defense. The commission reversed that finding and permitted the amendment.

and her mental disability totals 20% combined with the primary injury of 18% creates a simple sum of disability of 53% permanent partial disability to the body as a whole or 212 weeks. We find that the combination of the disabilities creates a greater sum of disability of 15% or 31.8 weeks. The Second Injury Fund is responsible for 31.8 weeks or $6,320.25."

*Claim 92–188947:* "The evidence in injury number 92–188947 is clear that claimant is permanently and totally disabled as a result of the last injury to shoulders combined with her pre-existing manic depression and physical disabilities. The [fund] is responsible for permanent and total disability benefits. Claimant reached maximum medical improvement on September 3, 1993. The Fund is ordered to pay claimant permanent and total disability benefits in the amount of $393.82 commencing January 16, 1994. The Fund is also ordered to pay claimant the difference between the permanent partial disability rate and permanent total disability rate for 20 weeks or $3,901.40."

The fund argues in Point I that the commission erred in finding claimant suffered three separate injuries and in awarding benefits in three separate claims. The fund contends:

Claimant had only one repetitive injury in that she received treatment for her wrists, elbows, and shoulders simultaneously; all three of her original claims allege injuries to both upper extremities and both shoulders; and the employer and insurer treated the claims as one injury, not even being able to apportion the amount of medical and temporary total disability paid on each claim.

█ A compensable injury occurs when an occupational disease causes an employee to become disabled and unable to work. *Prater v. Thorngate, Ltd.*, 761 S.W.2d at 228. In cases involving an occupational disease caused by repetitive movement, an employee is disabled and unable to work when the need for surgery is manifested. *Id.* at 228–29.

█ Carpal tunnel releases were performed on claimant's right and left wrists in August and September 1991. After each surgery claimant was off work for about one week, returned to light duty for two months, then resumed regular work duties. Surgeries were performed on claimant's elbows in March and April 1992. She returned to work approximately four months later. In January and February 1993, claimant underwent surgery on her shoulders. She returned to work after approximately six weeks. She was subject to permanent restrictions.

Prior to each surgery, claimant was disabled and unable to work. On three occasions claimant was disabled by reason of an occupational disease caused by repetitive movement. On each occasion the need for surgery was manifested. On each occasion surgery was performed. Each occasion presented a compensable injury. *Prater, supra.*

The fund relies on language in *Wiele v. National Super Markets, Inc.*, 948 S.W.2d 142 (Mo.App.1997), in arguing there was only one repetitive injury for which there were three treatments; that, therefore, the commission erred in awarding benefits in three separate claims. *Wiele* involved a claim for wrist injuries and a claim for shoulder injuries that an administrative law judge denied on the basis of the running of the statute of limitations for filing the claims.

The claimant in *Wiele* worked for the employer in that case from 1975 until May 1979, then from July 1980 through the time her claim was filed. She was diag-

nosed with bilateral carpal tunnel syndrome on March 12, 1987. She reported the diagnosis to her employer and told the employer the disease was work-related. The employer filed an accident report dated March 31, 1987. The report stated the date of injury as January 1987. It described the illness as carpal tunnel syndrome, hand and arm. The claimant in *Wiele* received a letter from her employer dated April 8, 1987, denying her claim for workers' compensation stating that she failed to give proper notice and that she had gone to her own doctors rather than those authorized by her employer. The letter also stated the employer did not believe the claimed injury was work-related. It recommended that the claimant seek treatment with her own physician.

After receiving the April 8, 1987, letter, the claimant was treated conservatively by her physician. Her symptoms decreased until 1990. In 1990 she experienced numbness and tingling from her fingertips to her shoulder. On April 17, 1990, her condition was diagnosed to be bilateral carpal tunnel syndrome. She was advised the symptoms were definitely work-related. Surgery was performed June 20, 1990. The claimant filed a claim for compensation June 22, 1990, alleging injury to her " 'right wrist, right arm, left wrist, left arm, body' " caused by " 'progressive injuries to her wrist and arm' during the course of her employment with employer." 948 S.W.2d at 144. She returned to work September 3, 1990. Following a hearing on her claim, the administrative law judge concluded "claimant sustained a compensable occupational disease to her right wrist/hand, left wrist/hand, and both shoulders that arose out of and in the course of her employment . . . but that her claims were barred by the statute of limitations." *Id.* The administrative law judge held the claimant's personal knowledge in March 1987 that she had been diagnosed with

bilateral carpal tunnel syndrome that had been caused or aggravated by her job duties had started the running of the three-year statute of limitations; that failure to file a claim by March 1990 barred the claim.

The administrative law judge in *Wiele* further found that because the claimant knew by March 19, 1992, that she was suffering a shoulder problem that was work-related and did not file a claim for shoulder injuries before March 12, 1995, her claim for shoulder injuries was barred by the statute of limitations. The administrative law judge found the shoulder injury to be a separate and distinct injury and not a continuation of the claimant's carpal tunnel complaints.

The commission reversed the administrative law judge's findings. *Wiele* explained the commission's decision:

> In its Amended Final Award Allowing Compensation reversing the award of the ALJ, the Commission disagreed with the ALJ that the statute of limitations barred either the claim for the wrist injuries or the claim for the shoulder injuries. It concluded that the statute of limitations does not begin to run until the occupational disease causes the employee to become disabled and unable to work and that claimant was not physically disabled from work until May 11, 1990. *It also concluded that the shoulder injuries were included in the claim for compensation and that claimant was suffering from those injuries at the time she made her complaint.* [Emphasis added.]

*Id.* at 145. The fund relies on the last sentence of the above statement in *Wiele* as support for its Point I.

The discussion in *Wiele* of whether the shoulder disability in that case was the product of an injury separate from the

carpal tunnel disability was couched in terms of the statute of limitation issue in the case. *Wiele* explains the employer's argument:

> [E]mployer claims the Commission erred in awarding disability for claimant's shoulder disability because claimant never filed a formal claim for workers' compensation alleging a shoulder disability, and her 1990 claim cannot be construed to include the shoulder injury, which is a separate and distinct condition. It argues that, consequently, any claim for claimant's 1992 shoulder disability was barred by the statute of limitations as set forth in § 287.430 and § 287.063.3 RSMo (1986).

*Id.* at 146.

In *Wiele* a single claim was filed in 1990. The claimant had not lost time from work due to the disease that produced the claim until a little more than one month prior to the filing of that claim. Following surgery, the claimant in *Wiele* continued receiving medical treatment and in 1992 was referred to another physician for shoulder pain.

The court in *Wiele* pointed out that "[t]he 1990 claim described the parts of body injured as: 'right wrist, right arm, left wrist, left arm, body.'" *Id.* Explaining that the Workers' Compensation Act should be liberally construed with a view to the public welfare, the court stated the act's object and purpose "is that substantial rights are to be enforced at the sacrifice of procedural rights." *Id.* It held "[t]here was substantial and competent evidence to support the Commission's determination that claimant's shoulder problems existed concurrently with the carpal tunnel problem and this finding was not against the overwhelming weight of the evidence"; that there was no error in the commission

finding claimant's claim to her arms from repetitive work activity covered her shoulder disability. *Id.* at 147.

The facts of this case differ significantly from the facts in *Wiele*. Further, the issue before this court is not the same issue presented in *Wiele*. In this case claimant had three different surgeries. On each occasion she was disabled and unable to work. The issue that was presented to the commission and the issue before this court is who should pay, the employer or the fund. In *Wiele* the issue was whether a claim for a shoulder disability was timely filed. There was no second injury fund liability claimed in *Wiele*. The discussion of one injury or multiple injuries was directed to the applicability of the statute of limitations. The fund's reliance on *Wiele* is misplaced.

A more instructive case is *Hunsicker v. J.C. Industries, Inc.*, 952 S.W.2d 376 (Mo. App.1997). The court in *Hunsicker* found a series of repetitive motion occupational disease injuries presented new and distinct claims; that they did not relate back to a prior claim for carpal tunnel disability. *Id.* at 382. *Hunsicker* acknowledged the principle that an employee who suffers an occupational disease is "compensably injured" when the employee suffers a demonstrated loss of earning ability. *Id.* at 381. In this case, claimant received three groupings of surgical treatments. Her earning ability was impaired each time. The commission did not err in finding there were three separate occupational disease injuries. Point I is denied.

Point II contends the commission erred in considering claimant's attempted amendment of her claim. The fund argues the claim was not made within the time permitted by the applicable statute of limitations, § 287.430, RSMo 1986;[3] that it

---

3. The applicable statute of limitation at the

time claimant filed her first claim was

was barred because it was a new and distinct claim that did not relate back to the filing of the original claim. Point II asserts that the facts alleged could not form the basis for an amendment against the fund; that "allowing a late amendment of a claim to allege a new pre-existing disability [was] prejudicial, violate[d] principles of fairness and contradict[ed] logic."

In reversing the administrative law judge's ruling denying claimant's proposed amendment of the claim against the fund,[4] the commission explained:

We disagree and reverse the finding that claimant could not amend her claim for compensation to add manic-depression against the Fund. Claimant alleged permanent and total disability against the Fund. The Fund should have questioned claimant more thoroughly in her deposition regarding the conditions that made her permanently and totally disabled or requested a motion for a more definite statement. To disallow this woman the total amount of compensation to which she is otherwise entitled based on procedural posturing violates the intent of the Act. Section 287.550, RSMo [2000], states:

All proceedings before the commission or any commissioner shall be simple, informal and summary, and without regard to the technical rules of evidence, and no defect or irregularity therein shall invalidate the same. Except as otherwise provided in this chapter, all such proceedings shall be according to such rules and regulations as may be adopted by the commission.

The purpose of the Workers' Compensation is to search for the truth, and procedural rights are to be sacrificed in favor of substantive rights. *Loyd v. Ozark Electric Coop., Inc.,* 4 S.W.3d 579, 586 (Mo.App.1999). "The very object and purpose of the entire act is that substantial rights are to be enforced at the sacrifice of procedural rights." *Wiele v. National Super Markets, Inc.,* 948 S.W.2d 142, 146 (Mo.App.1997). See, also, *Ross v. Joplin Corp.,* 229 S.W.2d 303 (Mo.App.1950):[sic] *Schrabauer v. Schneider Engraving Product,* 224 Mo. App. 304, 25 S.W.2d 529 (Mo.App.1930); and, *Vogt v. Ford Motor Co.,* 138 S.W.2d 684 (Mo.App.1940).

The commission found:

The Fund had ample notice that claimant had significant pre-existing manic depression. The Fund was provided reports of Dr. Belz dated May 28, 1997, October 31, 1997[,] and December 18, 1997. The Fund admits it was provided with Dr. Belz's amended report which stated that her manic-depressive condition was pre-existing and severe, seven days prior to the hearing. Dr. Belz noted that claimant had pre-existing manic depression and assessed a percentage of disability attributable to pre-existing manic depression and a percentage Dr. Belz felt was caused by the work accident. Dr. Woodward also found that claimant had significant pre-existing manic depression after doing an independent medical examination on August 8, 1998. The Fund objected to Dr. Woodward's testimony regarding pre-existing depression based on the 7–Day rule. Dr. Woodward's deposition was taken February 24, 1999. The hearing

§ 287.430, RSMo Cum.Supp.1993. The applicable statute when her last two claims were filed was § 287.430, RSMo 1994. The text of those statutes regarding filing of claims against the second injury fund is the same as the text in the current statutory revision, RSMo 2000, quoted, *infra.*

4. *See* n. 2, *supra.*

was held March 11, 1999. The Fund could have cured its objection by cross-examining him regarding his findings or by requesting a continuance, but did not do so. The purpose of the 7 Day rule is not to exclude medical records or opinions. *Goodwin v. Farmers Elevator and Exchange,* 933 S.W.2d 926, 928–929 (Mo.App.1996). When an opinion is testified to or a medical report is not furnished seven days prior to the hearing or deposition, the "injured" party can either cross-examine the doctor immediately or request a continuance. *Id.*

The commission observed that Dr. Belz testified live before the administrative law judge; that the fund conducted extensive cross-examination. It observed the fund did not request a continuance; that the fund waived any objection it may have had when it cross-examined Dr. Belz. The commission concluded:

And, finally, the test of fairness is "whether additional proof or additional witnesses for which a party is not prepared would be required to meet the new allegations." *Nichols v. Mama Stuffeati's,* 965 S.W.2d 171 (Mo.App. 1997). The Fund does not have the right to send a claimant for an independent medical examination; thus, no new examining doctor's opinion could be introduced and if the Fund wished to depose the treating psychiatrist/physician, a continuance should have been requested and granted.

■ The commission further found the claim of manic depressive illness should be treated as an occupational disease.[5] Determination of whether an injury is an accident or occupational disease is a question of fact. *Maxon v. Leggett &*

*Platt,* 9 S.W.3d 725, 729 (Mo.App.2000). In reviewing workers' compensation awards appellate courts give deference to the commission's determinations of facts. *Wilmeth v. TMI, Inc.,* 26 S.W.3d 476, 478 (Mo.App.2000).

The commission found claimant's aggravated manic depression became reasonably apparent and discoverable when medical personnel diagnosed her in 1997. *See Mann v. Supreme Exp.,* 851 S.W.2d 690, 692 (Mo.App.1993); *Thomas v. Becker Metals Corp.,* 805 S.W.2d 271, 273 (Mo. App.1991); *Sellers v. TWA,* 752 S.W.2d 413, 415 (Mo.App.1988). The earliest this would have occurred was May 28, 1997, the first date attributed to the preparation of the medical report so advising claimant.

■ "A claim against the second injury fund shall be filed within two years after the date of the injury or within one year after a claim is filed against an employer or insurer . . ., whichever is later." § 287.430, RSMo 2000. Claimant's request to amend her claim was at the beginning of the hearing before the administrative law judge, March 11, 1999, within two years of May 28, 1997, the date the statute of limitations began to run. This court finds no error in the commission's findings permitting claimant to amend her claims against the fund. Point II is denied.

Point III is based on the premise that Point I would be granted. It asserts the commission erred in finding claimant was permanently and totally disabled by reason of a combination of prior and last injuries; that any disability was attributable solely to the last injury. The argument directed to Point III explains, "Since Claimant's upper extremities problems are

---

**5.** The administrative law judge found the claim of aggravation of the pre-existing mental illness was more like an occupational disease claim than an accident claim; that,

therefore, the statute of limitations in occupational disease cases was applicable. The commission adopted the finding.

only one injury, not three separate injuries (*See Point 1* ), Claimant's permanent total disability is caused by the last injury alone, and therefore the Second Injury Fund has no liability."

The fund did not prevail on Point I in which it contended claimant's disability resulted from one injury rather than three. Point III is, therefore, moot. The award is affirmed.

SHRUM and MONTGOMERY, JJ., concur.