**Bill PRATT, Claimant–Respondent,**

v.

**MFA, INC., Employer–Appellant.**

**No. 24146.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 1, 2002.

Daniel R. Wichmer of Springfield, MO, and Jerry A. Harmison, Jr. of Lathrop & Gage, L.C., Springfield, MO, for appellant.

Paul F. Reichert, Springfield, MO, for respondent.

JAMES K. PREWITT, Judge.

MFA, Inc. ("MFA") appeals from a decision of the Labor and Industrial Relations Commission ("Commission") which upheld the determination of an administrative law judge in the Division of Workers' Compensation that Bill Pratt ("Pratt") suffered a change in condition meriting additional compensation. Pratt contends that his one-hundred-pound weight gain, hypertension, and edema resulted from an injury he sustained while working for MFA, for which he has already received compensation. MFA challenges the Commission's decision, arguing that Pratt is not entitled to additional compensation because he gained most of his additional weight and exhibited hypertension and edema prior to the original hearing, and failed to give any notice that those conditions were related to his injury. Because we find that Pratt did experience a change in condition subsequent to his initial workers' compensation award, we affirm the Commission's decision awarding additional compensation.

### Facts

Pratt was injured on September 9, 1994, when he tripped over a metal pipe in the basement of the MFA Milling Company in Springfield, Missouri, where he was employed as a machine operator. When he fell, he hit his head on a concrete wall and lost consciousness. As a result of the accident, Pratt sustained a herniated cervical disc with compression of the spinal cord resulting in transient total paralysis. Following surgery, Pratt continued to experience lower extremity weakness, had difficulty ambulating, and became morbidly obese.

On March 2, 1999, the Division of Workers' Compensation found that Pratt had a compensable injury and ordered that MFA pay Pratt permanent total disability benefits in the amount of $301.58 per week, for Pratt's lifetime, in addition to a lump sum for unpaid temporary total disability compensation. The Commission affirmed that award on October 2, 1999. This court affirmed the Commission's decision by an order and memorandum on June 14, 2000.

Subsequently, Pratt filed a "Motion to Review and Change Award" with the Commission on June 21, 2000, alleging that an increase in the compensation and benefits is necessitated by the "chronic exacerbation" of conditions "directly related to the compensable injury of September 9, 1994" including super morbid obesity,

poorly controlled hypertension, and bilateral pedal edema. Following a hearing by the Division of Workers' Compensation, the Commission modified its previous award and permitted additional compensation for a change in condition to cover the cost of medical treatment for Pratt's super morbid obesity.[1]

## Discussion

■ MFA raises three points on appeal. In its first point, MFA argues that the Commission erred as a matter of law in finding that Pratt experienced a change of condition because Pratt failed to show that some element of disability or symptom not contemplated at the original hearing caused his condition to worsen or suffer a relapse, as Pratt suffered from hypertension, edema, and morbid obesity and had experienced a significant weight gain prior to the original award.

MFA argues in its second point that the Commission's decision that Pratt sustained a change in condition was not supported by competent and substantial evidence and was against the overwhelming weight of the evidence "because even giving the Commission's decision all deference and following the Commission's determinations on credibility, there was no evidence indicative of a change in condition" in that the medical experts agreed that Pratt suffered from hypertension, morbid obesity, and edema before the date of the first Commission decision. As MFA's second point and first point are similar, we will consider them together.

■ "On appeal in a worker's compensation case, we review the whole record, including legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission." *Kramer v. Bill's Marine, Ltd.*, 897 S.W.2d 213, 215 (Mo.App.1995). *See also Kennison v. Ranken Technical Inst.*, 44 S.W.3d 899, 901 (Mo.App.2001). We defer to the Commission's resolutions of issues of credibility and conflicting evidence. *Sherman v. First Fin. Planners, Inc.*, 41 S.W.3d 633, 635 (Mo.App.2001). We will "modify, reverse, remand for rehearing or set aside an award or decision of the Commission only if the Commission's actions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence." *Kramer*, 897 S.W.2d at 215.

■ Section 287.460 invests the Commission with authority to modify an award due to a change in the employee's condition before final payment on the award has been made or the expiration of time during which the award is to be paid. *See Holman v. Normandy Osteopathic Hosp.*, 691 S.W.2d 360, 361 (Mo.App.1985). "In order to obtain an increased award upon the grounds of change of condition, the employee must show that since the original award his condition has become substantially worse." *Blissenbach v. Gen. Motors Assembly Div.*, 650 S.W.2d 8, 10–11 (Mo. App.1983). "A continued incapacity of the same kind and character for which an award has been made is not a change in condition warranting a modification of the award." *Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5, 8 (Mo.App.1985). Rather, the employee must show " 'that since the time of the rendition of the original award his condition has become substantially worse, and not that it has in fact always been

---

1. The Commission ordered that MFA pay for the medical treatment recommended by Dr. Belz until Pratt reaches his pre-injury weight. That treatment includes an initial physical evaluation, blood testing, EKGs, monthly physician benefits, a protein-sparing modified fast, and weight loss workshops.

worse than the commission happened to have found it to be.'" *Brammer v. Binkley Min. Co. of Mo.*, 244 S.W.2d 584, 589 (Mo.App.1951) (quoting *Winschel v. Stix, Baer & Fuller Dry Goods Co.*, 77 S.W.2d 488, 491 (Mo.App.1934)).

The original award of the Commission compensated Pratt for the medical expenses related to his injury, including his surgery and hospitalization. The evidence before the Commission indicated that Pratt gained 40 to 50 pounds in his 27 years of marriage, and weighed approximately 325 pounds at the time of the accident. At the time the Commission entered its initial award, Pratt weighed approximately 380 pounds, and was classified as "morbidly obese" by his treating physician, Dr. Lay, his examining physician, Dr. Belz, and the employer's examining physician, Dr. Lennard.

At the time Pratt filed his application for review of the Commission's award, he weighed over 430 pounds, and walked with a cane. His treating physician, Dr. Lay, restricted Pratt's level of activity, recommending "limited ambulation with no climbing, squatting, kneeling or lifting greater than 15 lbs." Dr. Belz testified in a deposition that according to his body mass index ("BMI"), Pratt would have been classified as obese, not morbidly obese, at the time of the accident. Dr. Lennard would have classified Pratt as morbidly obese at the time of the accident, but he did not use BMI in making that determination. Dr. Lennard testified that in his opinion Pratt's morbid obesity was not related to the accident, and suggested that because his siblings were morbidly obese, Pratt's condition was genetic or volitional.

■ The Commission stated in its Order Modifying Final Award Based on Change in Condition that it found Dr. Belz's testimony regarding Pratt's morbid obesity

"persuasive." Dr. Belz testified that "morbid obesity is a disease.... It's not gluttony and it's not sloth." The Commission also considered the opinions of the employer's medical expert, Dr. Lennard, but stated that it found "Dr. Belz's opinions regarding causation to be more credible and more persuasive than those of Dr. Lennard." Finding no fraud, we are bound by Commission's determinations of credibility. *See Sherman*, 41 S.W.3d at 635.

Recently, this District determined that a morbidly obese man who suffered a back injury could not recover from the Second Injury Fund because his obesity did not constitute a preexisting permanent partial disability. *See Loven v. Greene County*, 63 S.W.3d 278 (Mo.App.2001). Unlike *Loven*, here we are examining whether the future medical care Pratt needs to treat his obesity, hypertension, and edema can be attributed to his workplace injury, not whether his obesity creates a disability in and of itself. Thus, *Loven* is inapplicable to the present case.

Although Pratt was obese at the time of his accident, the accident greatly reduced his ability to ambulate, causing his obesity to become more severe. Between the time of the accident and the time of the Commission's initial award, a period of five years, Pratt had gained between 50 and 60 pounds. Between the time of the Commission's initial award and the time Pratt filed his application for review, a period of less than one year, Pratt had gained 45 pounds. Clearly his weight is escalating at a faster pace now than it was prior to the Commission's initial award.

Dr. Belz determined that the increased obesity was causally related to the accident. He testified that Pratt's excessive weight gain caused a hyperinsulinemic condition which caused the hypertension "and also accelerates heart and vascular

disease which are the conditions which will shorten life expectancy." Thus, while at his pre-injury weight, Pratt's obesity did not create a life-threatening condition, his excessive weight gain subsequent to the accident has. Without the medical treatment for Pratt's super morbid obesity recommended by Dr. Belz, the evidence indicates Pratt's weight will continue to escalate and it is the escalating weight gain which has caused his condition to become "substantially worse" since the Commission's original award, opposed to "in fact always ... worse than the commission happened to have found it to be." *See Brammer*, 244 S.W.2d at 589. Having reviewed the entire record, we determine that the Commission's decision that Pratt suffered a change in condition entitling him to additional compensation is supported by substantial and competent evidence and is not contrary to the overwhelming weight of the evidence. *See Farmer–Cummings v. Future Foam, Inc.*, 44 S.W.3d 830, 833 (Mo.App.2001). MFA's first and second points are denied.

In its third point, MFA argues that the Commission erred in awarding Pratt increased benefits pursuant to § 287.470 because there was no change of condition in that Pratt was suffering from the morbid obesity, hypertension, and edema prior to his first hearing and he failed to give any notice at the first hearing that these conditions were related to his injury, "and as a result, [Pratt] cannot raise this issue in a hearing on the issue of change of condition." MFA contends that, "had Employee given notice at the first hearing in 1999, then at the very worst, Employer would have been responsible for compensating Employee to lose 65 pounds, not 115." The section that MFA cites as authority for its point, § 287.420, requires an injured employee to give "written notice of the time, place, and nature of the injury,

and the name and address of the person injured" no later than 30 days after the accident unless the Commission finds there is good cause for failure to give the notice. Pratt met the requirements of § 287.420 by informing MFA that he had fallen at work and suffered a spinal injury. The substantial weight gain, hypertension and edema that Pratt suffered following the accident presented themselves over a course of many years and intensified to a life-threatening degree subsequent to the Commission's initial award. They could not have been known to him "no later than 30 days after the accident," and Pratt cannot be faulted for failing to inform MFA of those conditions before they manifested. MFA's third point is denied.

The decision of the Labor and Industrial Relations Commission is affirmed.

PARRISH, J. and RAHMEYER, J., concur.