Lyndell CLARK, Claimant–Respondent,

v.

**FAG BEARINGS CORPORATION, Employer–Appellant,**

**Liberty Mutual Insurance Co. Insurer–Appellant,**

and

**Treasurer of the State of Missouri as Custodian of the Second Injury Fund, Additional Party.**

No. 25585.

Missouri Court of Appeals, Southern District, Division One.

April 30, 2004.

Rehearing Denied May 12, 2004.

Application for Transfer Denied June 22, 2004.

John S. Dolence, for appellant.

Robert A. Lynch and Steven A. Hays, for respondents.

PHILLIP R. GARRISON, Judge.

FAG Bearings Corporation ("Employer") appeals a temporary or partial award in favor of Lyndell Clark ("Employee"), made by the Labor and Industrial Relations Commission ("Commission") in this workers' compensation case, claiming in two points that there was insufficient evidence on the issue of causation, and that

the award was against the overwhelming weight of the evidence. We affirm.

■ We have no appellate jurisdiction in workers' compensation cases except as expressly conferred by statute. *Marston v. Juvenile Justice Ctr.*, 88 S.W.3d 534, 536 (Mo.App. W.D.2002); *Hillenburg v. Lester E. Cox Medical Ctr.*, 879 S.W.2d 652, 655 (Mo.App. S.D.1994). Section 287.495 [1] authorizes an appeal from the "final award of the commission"; one which disposes of the entire controversy between the parties. Ordinarily, no appeal lies from a temporary or partial award. *Watkins v. Bi–State Development Agency*, 924 S.W.2d 18, 20–21 (Mo.App. E.D.1996). However, appellate review of an award denominated "temporary" or "partial" is permissible where the issue is liability for any compensation. *Marston* at 536; *Harp v. Malone Freight Lines, Inc.*, 16 S.W.3d 667, 670 (Mo.App. E.D.2000); *Avery v. City of Columbia*, 966 S.W.2d 315, 320 (Mo.App. W.D.1998); *Woodburn v. May Distrib. Co., Inc.*, 815 S.W.2d 477, 480 (Mo.App. S.D. 1991). We have appellate jurisdiction in the instant case, therefore, because the issue was whether Employer is liable for any compensation for the injury in question.

This appeal involves a cervical spine injury, which was the second of two injuries sustained by Employee while working for Employer. The first occurred on April 15, 1999 when Employee injured his right shoulder and was diagnosed with an "AC joint separation" and "possible rotator cuff tear." [2] His right arm was placed in a sling and he was released to return to light-duty work the next day.

On April 21, 1999, Employee was struck on his right shoulder and side by a basket on the front of a moving forklift, while he was helping another employee move equipment parts. Employee was not knocked down by the basket, but had to take a couple of steps to regain his balance. He described the blow as a "quick stiff jolt . . . kind of like if you were running and trying to stop yourself and you bounced into the wall or something." According to Employee, he felt pain in his shoulder, neck, and elbow after being struck and immediately called his shift supervisor, Walter Keener ("Keener"), telling him of the incident and requesting to be taken to the hospital. When Employee was seen at the hospital, he said that he was struck by a forklift traveling at a minimal rate of speed, "so slow that it was almost stopped per [Employee]" and that it did not knock him down. He was diagnosed with "[m]yofascial strain, cervical and thoracic spine" when x-rays of the cervical spine, thoracic spine and right shoulder were "negative."

The next day, in accordance with Employer's policies, Employee went to the Employer's doctor, Dr. Brian Murphy ("Dr.Murphy"), who diagnosed a diffuse muscle skeletal contusion with diffuse pain over the cervical neck, right shoulder, and right elbow. An MRI performed at Dr. Murphy's request demonstrated a rotator cuff tear in the right shoulder. Dr. Murphy referred Employee to Dr. Robert Lieurance ("Dr.Lieurance"), an orthopaedic surgeon who confirmed a "small right rotator cuff tear" and performed an arthroscopic repair.

On June 3, 1999, Employee reported to Dr. Lieurance that he was having numbness in his right thumb and index finger. Dr. Lieurance's examination disclosed a

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. Employee was awarded fifteen percent permanent partial disability for his shoulder injury. No issue involving that award is raised in this appeal.

full range of motion of Employee's neck, and mild discomfort in the scapular region, and x-rays revealed "some degenerative disk disease and spurring at C4–5 and C5–6" with "some narrowing of the neuroforamen at C4–5 and C5–6 bilaterally." On June 24, 1999, Dr. Lieurance again noted "some subjective decreased sensation in the thumb and index finger of both hands," diagnosed "possible C6 radiculopathy" and referred Employee to Dr. Daniel Dagen ("Dr.Dagen") for a neurological evaluation.

An MRI of the cervical spine was performed on July 1, 1999 revealing a "[c]entral disk protrusion at C3–4 and C4–5 [resulting] in ventral indentation of the cervical cord and moderate canal stenosis," and a "[r]ight-sided neural foraminal stenosis at C5–6 due to facet and uncovertebral joint osteophyte formation." It was also noted that "[t]here [was] a severe mass effect in the exiting right C6 nerve root."

Employee was examined by Dr. Dagen on July 2, 1999, and was found to have bilateral carpal tunnel syndrome, "C6 radiculopathy [on the] right," "[p]robable C5–6 HNP [on the] right" and "[m]ultilevel cervical spondylosis." Dr. Dagen concluded that Employee's "right upper extremity symptoms ... are cervicogenic in etiology and traction or epidural steroid injection will be the only therapeutic maneuvers, short of operative intervention."

On August 10, 1999, Dr. Lieurance noted that Employee was "currently not approved for any further treatment for [sic] myself with regards to the neck or radiculopathy." On September 14, 1999, Dr. Lieurance reported that Employee was continuing to have "quite a bit of problems with his neck and hand pain and numbness." Finally, on October 5, 1999, Dr. Lieurance noted that Employee had

reached maximum medical improvement with regard to his shoulder and released him with a fifteen percent rating of the shoulder.

Employee was also examined by Dr. Paul Toma ("Dr.Toma") on April 13, 2000. Dr. Toma diagnosed, among other things, "[c]ervical [r]adiculopathy with C6 [i]njury on the right." His report of that examination, which is discussed more fully below, contained his opinion that the forklift accident was most likely the cause of that injury.

Dr. Frank Tomecek ("Dr.Tomecek") examined Employee on May 21, 2001. In the history portion of his report, Dr. Tomecek noted that Employee had complaints of neck and right arm pain, and he had been in good health until he was hit by a forklift on April 21, 1999 and "was knocked side ways and caught himself" before falling down. He also stated that Employee was "hit very hard, however, and he suffered a severe right rotator cuff injury." Dr. Tomecek also noted that Employee was continuing to have neck pain, severe right shoulder and arm pain, and intermittent numbness in his right hand. Employee reported to him that the numbness in his right hand improved when he flexed his neck, but was worse when he extended his neck. Dr. Tomecek said that it was a "medical necessity that a cervical MRI [be] obtained." [3] Employee went back to Dr. Tomecek on August 22, 2001, bringing with him a cervical MRI that demonstrated a cervical herniated disc at C4–5 and C5–6. Dr. Tomecek said in his report that "I feel within [a] reasonable degree of medical certainty that the herniated disks in [Employee's] neck were caused by work-related injury that oc-

---

**3.** The record is not clear concerning whether Dr. Tomecek knew that there had been a

cervical MRI performed in July 1999.

curred when he was hit by a forklift truck from behind and on the right side." He also recommended surgery for decompression and fusion at C4–C6. Employee claims that he has never been afforded the treatment recommended by Dr. Tomecek.

■ In conducting our review, we review the findings of the Commission, and not those of the ALJ. *Williams v. City of Ava,* 982 S.W.2d 307, 310 (Mo.App. S.D. 1998). Where, as here, the Commission's award incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award. *Id.* Pursuant to *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003), the standard of review in workers' compensation cases is whether, considering the whole record, there is sufficient competent and substantial evidence to support the award. *Id.* at 223. The Commission's interpretation and application of the law, however, are not binding on this court and fall within our realm of independent review and correction. *Williams* at 310.

Employer first challenges the award by alleging that there was insufficient competent and substantial evidence of causation of the cervical injury. Employer argues that the Commission incorrectly found causation on the basis of two items: (1) an opinion it inferred from a medical record that was silent on causation (Dr. Lieurance's records), and (2) an opinion, with an unknown factual basis, contained in an unauthenticated and unverified hearsay document that was not admitted into evidence (Dr. Toma's report).

■ A claimant in a workers' compensation case bears the burden of proving that an accident occurred and that it resulted in injury. *Thorsen v. Sachs Elec. Co.,* 52 S.W.3d 611, 619 (Mo.App. W.D. 2001). For an injury to be compensable, the evidence must establish a causal con-

nection between the accident and the injury. *Silman v. William Montgomery & Assoc.,* 891 S.W.2d 173, 175 (Mo.App. E.D. 1995). Where the injury is a sophisticated one requiring surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding. *Id.* at 175–76. In particular, the subject of a herniated disc and its diagnosis, causation, and cure has been held to be in the realm of highly scientific techniques where expert opinion is essential. *Id.* at 176.

In support of this point, Employer refers to evidence relating to three of the doctors who examined or treated Employee. First, Employer refers to the deposition testimony of Dr. Tomecek, and notes that the ALJ made the following finding:

[Employee's] attorney sent [Employee] to Dr. Tomacek [sic], a neurosurgeon in Tulsa, Oklahoma. [Employee] underwent an additional MRI of his cervical spine on May 29, 2001. Dr. Tomacek [sic] examined [Employee] and reviewed the MRI. He found that [Employee] had a cervical herniated disc at C4–5 and C5–6 with a large central herniation and mild compression of the spinal cord at C4–5 along with cervical stenosis at C5–6. He also noted a mild disc bulge at C6–7. He opined that [Employee] would require a surgical repair of the problem and noted that the cause of the difficulty was the work-related injury when he was hit by a forklift from behind on the right side. However, Dr. Tomacek [sic] was not given the history of the April 15, 1999, injury by [Employee][,] nor was it apparent that he had considered the medical information regarding the earlier injury in making his findings. As a result, it is difficult if not impossible for me to accept the finding of Dr. Tomacek

[sic] as to causation as credible since he did not have the full medical history of claimant at the time of making his determination. However, Dr. Tomacek's [sic] opinion of the need for surgery is credible especially in light of Dr. Toma's recommendations and Dr. Lieurance's findings.

Employer cites *Pratt v. MFA, Inc.,* 67 S.W.3d 697 (Mo.App.S.D.2002), for the proposition that, absent fraud, the Commission's determination of credibility is binding on this court. *Id.* at 700. This court defers to the Commission with regard to credibility determinations of deposition testimony. *Thorsen* at 619.

Employer also refers to the records of Dr. Lieurance. Those records, which were introduced at the hearing, contain no opinion as to causation of Employee's cervical condition. The ALJ found that Employee's cervical injury was caused by being hit by the forklift at work, which now necessitates additional medical treatment including the strong likelihood of surgery. In doing so, it relied on the findings of Dr. Toma, discussed below, but also stated:

> it is clear that [Employee] was hit by the forklift to some extent. From his testimony the force was sufficient to require him to move a couple of steps to regain his balance. According to the testimony of [his co-worker] the forklift at least nudged him and move [sic] him slightly. *Moreover, Dr. Lieurance's records would imply causation since at no time within his reports does he indicate that this matter was not work related and he continued to recommend additional treatment while being authorized by the employer/insurer to treat claimant for his injury at work.* Thus[,] even though there may be doubts, those doubts must be resolved in favor of [Employee] and toward compensability.

(emphasis added). We are cited to no authority in support of the proposition that the Commission may infer an expert opinion on causation from silence. In fact, *Grime v. Altec Indus.,* 83 S.W.3d 581 (Mo. App. W.D.2002), indicates just the opposite. The Commission's finding that an implication arose because Dr. Lieurance continued to recommend additional treatment while being authorized by the Employer/insurer to treat Employee for his work-related injury, ignores the fact that Employee testified that Dr. Lieurance told him that he was treating him only for his shoulder injury. The Commission misapplied the law in finding causation from the silence on that issue in Dr. Lieurance's records.

■ The ALJ also referenced records of Dr. Toma in his award. He noted that Dr. Toma referred to Employee's two accidents, examined Employee, and reviewed the previously performed MRI of Employee's cervical spine. He also referred to Dr. Toma's record of his examination, in which he stated that the MRI showed that Employee has cervical spondylosis with narrowing of the foramin at C4–5 and C5–6, and in which he diagnosed "[c]ervical [r]adiculopathy with C6 [i]njury on the right." The ALJ quoted from Dr. Toma's examination record where, in referring to the cervical spine and C6 radiculopathy, he said this "certainly was more likely related to the forklift accident than any other event that [Employee] has listed and for that reason more likely than not that his cervical spine injury was related to the forklift accident." The ALJ concluded that based upon all the evidence, "and specifically the findings of Dr. Toma, who had claimant's entire medical history, I find that claimant's being hit by the forklift at work caused his cervical spine injury which now necessitates additional medical treatment including the strong likelihood of surgery."

Employer notes that Dr. Toma's records appear in the record on appeal only as a part of deposition Exhibit 2 referred to in the deposition of Dr. Tomecek. In that deposition, admitted without objection at the hearing before the ALJ, Dr. Tomecek stated that additional medical records had been provided to him, which were contained in his file on Employee. Employee's attorney then said, "For purposes of clarification for the commission, we're going to make your file Exhibit 2 and include a copy of that in with this deposition, okay?" to which Dr. Tomecek replied, "Okay." There was no further foundation laid with reference to Exhibit 2 or its contents, and it was not offered in evidence during the deposition. At the hearing, the deposition, presumably with the attached Exhibit 2, was admitted without objection from Employer.[4]

Employer's contention is that Dr. Toma's record was not properly before the ALJ, and consequently the award was not supported by expert testimony concerning causation. Several considerations mitigate against this proposition. Section 287.560 provides, in pertinent part, that "[a]ny party shall be entitled to ... use depositions in like manner as in civil cases in the circuit court...." Section 287.550 provides that "[a]ll proceedings before the commission ... shall be simple, informal and summary, and without regard to the technical rules of evidence...."[5] This is in keeping with the purpose of the Workers' Compensation Law, which is to search for the truth and to enforce substantial rights at the sacrifice of procedural rights. *Lorenz v. Sweetheart Cup Co., Inc.*, 60 S.W.3d 677, 684 (Mo.App. S.D.2001).

*Dorman v. State Bd. of Registration*, 62 S.W.3d 446 (Mo.App. W.D.2001), involved a hearing concerning disciplinary action against a physician before the Administrative Hearing Commission. There the physician complained that the Commission's reliance on the deposition testimony of the patient's wife and an expert's testimony was erroneous because their testimony depended on facts contained in a journal kept by the patient's wife. *Id.* at 454. He argued that the journal was inadmissible hearsay, and could neither be the basis for the expert's opinion nor provide substantial evidence to support the Commission's decision. *Id.* The *Dorman* court held that one basis for concluding that the physician waived any claim of error concerning the admissibility of the journal was the fact that the journal was attached as an exhibit to the expert's deposition, which was admitted at the hearing without objection. *Id.* The court held that statements in violation of evidentiary rules do not qualify as competent and substantial evidence to support an agency's decision when proper objection is made and preserved. *Id.* at 454. It also stated, however, that where no objection is made, hearsay testimony may be considered and, in fact, all probative evidence received without objection in a contested case must be considered in administrative hearings. *Id.*

A similar contention is made here. Employer argues that Exhibit 2 containing

---

4. While the record does not clearly reflect whether Exhibit 2 was actually attached to Dr. Tomecek's deposition admitted by the ALJ, Dr. Toma's report appears only as a part of Exhibit 2 and obviously the ALJ had Dr. Toma's record before him. We presume from these facts that Exhibit 2 was attached to and offered as part of Dr. Tomecek's deposition. There is no contention to the contrary here.

5. The rules of the Department of Labor and Industrial Relations, in particular, 8 CSR 50-2.010(14) provide, however: "[h]earings before the division shall be simple, informal proceedings. The rules of evidence for civil cases in the state of Missouri shall apply."

Dr. Toma's report was unauthenticated hearsay and that any opinion expressed in it was not substantial evidence. Dr. Tomecek's deposition, with the attached Exhibit 2 containing Dr. Toma's report, however, was admitted at the hearing with no objection from Employer, as was the deposition with the attached exhibit in *Dorman*.

Additionally, Employer's contention that Exhibit 2 was never offered or admitted into evidence, and cannot be considered, is inconsistent with its counsel's statements at the hearing. Employee's counsel, in his direct examination of Employee, made an inquiry about one of the pages of that exhibit. Employer's counsel said, "it's already in evidence." Obviously, Employer considered that Exhibit 2 was in evidence at that point. This is consistent with the rule that exhibits that are marked and used in evidence are in evidence as if they had been formally introduced. *See Weule v. Cigna Property and Cas. Companies*, 877 S.W.2d 202, 204 (Mo.App. E.D.1994); *Wilkins v. Cash Register Service Co.*, 518 S.W.2d 736, 751 (Mo.App.St.L.1975); *Bolhofner v. Jones*, 482 S.W.2d 80, 85 (Mo. App.St.L.1972).

Considering the factors cited above, we hold that Exhibit 2 containing Dr. Toma's report was before the ALJ for his consideration. Because it contained substantial evidence of causation, which the ALJ was entitled to, and obviously did, believe Employer's first point is denied.

■ In its second point, Employer contends that the Commission erred in affirming the ALJ's award because the finding that Employee's cervical condition was caused by a work-related incident is against the overwhelming weight of the evidence. Employer argues that the evidence, taken as a whole, reveals that there is no credible medical evidence supporting a finding of causation.

As indicated above, *Hampton* held that we are not to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award. *Id.* at 223. It also held that the examination of the record required by *Davis v. Research Med. Ctr.*, 903 S.W.2d 557 (Mo.App. W.D.1995), need not be in two steps, but rather, "can be merged into a single determination whether, considering the whole record, there is sufficient competent and substantial evidence to support the award. This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.*

In *Hampton*, the supreme court acknowledged the thoroughly researched history of the standard of review in workers' compensation cases contained in *Davis*. *Id.* The *Davis* court, referring to the review of the whole record to determine if the award is against the overwhelming weight of the evidence, stated that a reviewing court must "consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence." *Id.* at 571. "In doing so, [a court] takes into consideration the credibility determinations of the Commission and, if those determinations as to witnesses who gave live testimony before the ALJ are different than those made by the ALJ, it also considers the ALJ's credibility findings as well as the reasons, if they are given, why the Commission differed with those findings." *Id.* In tracing the history of review in such cases, the *Davis* court noted that the court "examines the entire record to see whether the evidence against the Commission's findings so clearly overwhelms that which supports them that the Commission could not have reasonably made its findings and reached its result." *Id.* at 566.

In this point, Employer argues that the only medical evidence of causation in the record was that of Dr. Tomecek. In his deposition, Dr. Tomecek testified, in response to a hypothetical question, that the facts of the forklift accident "could" or "can" cause a cervical injury such as the injury experienced by Employee. On cross-examination, Dr. Tomecek said that the only evidence on which to base an opinion of causation was the history given by Employee, and in the absence of a history of prior problems, he felt "that the work-related injury that his [sic] been described did cause the herniated disc." The work-related accident Dr. Tomecek referred to was the forklift accident of April 21, 1999. As noted by the ALJ, however, Dr. Tomecek was not given the history of the April 15, 1999 injury. In fact, on cross-examination, Dr. Tomecek was asked to assume that witnesses who observed the forklift accident said that if the forklift touched Employee at all, it didn't move him; that Employee told a person immediately after the incident that he was not hurt and that that was the basis for the ALJ's rejection of his causation opinion; and that the only reason he would report anything was to make a point to Employer about his earlier shoulder injury. Dr. Tomecek responded that if that were true, it would change his opinion as to causation, and that he "wouldn't believe the event with the forklift might have caused it."

Contrary to Employer's basic premise in this point, however, as indicated in the prior point, Dr. Toma's report containing his opinion that the forklift accident was the cause of the cervical injury was before the ALJ for consideration. Additionally, the ALJ accurately noted that Employee complained of neck pain almost immediately after the forklift accident. Any doubt as to the right of an employee to compensation should be re-solved in favor of the injured employee. *West v. Posten Const. Co.,* 804 S.W.2d 743, 746 (Mo. banc 1991). This point is denied.

The award of the Commission is affirmed.

BARNEY, P.J., and PREWITT, J., concur.