Jacob HALE, Appellant,

v.

**TREASURER OF MISSOURI AS CUSTODIAN OF the SECOND INJURY FUND, Respondent.**

**No. ED 85464.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 7, 2005.

Ray B. Marglous, Ray B. Marglous, P.C., Clayton, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael T. Finneran, Assistant Attorney General, St. Louis, MO, for Respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Jacob Hale ("Claimant"), appeals the decision of the Labor and Industrial Relations Commission ("the Commission") affirming the award rendered by Administrative Law Judge Edwin J. Kohner ("the ALJ"). Claimant was not awarded permanent total disability benefits, but he was awarded permanent partial disability benefits. Respondent, the Second Injury Fund, was ordered to pay $16,646.73 for 59.79 weeks of permanent partial disability. We affirm.

Claimant was born on December 16, 1954. In 1978, Claimant began working for Anheuser–Busch ("Employer") as a filler operator, a position that he maintained throughout his time working for Employer. Claimant has a long history of physical and psychological ailments. On October 26, 1990, Claimant sustained a work related injury to his left shoulder, back, and neck. This injury led to a workers' compensation claim filed by Claimant against Employer that was settled based upon an approximate disability of 25% of the arm at the shoulder and 7.5% of the body referable to the low back and neck. As part of the treatment for this injury, Claimant underwent arthroscopic surgery on his left shoulder.

Among other things, Claimant has also suffered from depression. He went on disability leave from Employer from July 18, 1996 until August 26, 1996 for the stated reason of depression. He again went on disability leave from June 24, 1997 until September 24, 1997 for the stated reasons of depression and anxiety. Claimant also testified to a history of heart and breathing problems dating back to about 1990.

In 1997, Claimant's job as a filler operator required him to make repetitive twisting motions while removing tubes from a conveyer belt. The occupational disease at issue in this case was allegedly suffered on November 3, 1997. On this day,

Claimant says he experienced heavy sweats, suffered from shortness of breath, and felt pain in his right shoulder. Shortly after Claimant notified his supervisor about the problems he was having that day, he was sent to a hospital. Saint Louis University Hospital records indicate that Claimant's chief complaints related to pain in his left side and back, as well as breathing difficulties. Claimant went on disability leave from Employer from November 3, 1997 until February 23, 1998 for the stated reasons of mitral valve prolapse, hypertension, chronic bronchitis, and depressive illness. Claimant has not worked for Employer or anyone else since the incident on November 3, 1997. Claimant testified that he treated his right shoulder pain by himself for two years using home remedies. Then, in February of 2000, Claimant underwent arthroscopic surgery on his right shoulder.

On or about May 30, 2000, Claimant filed a workers' compensation claim alleging injury to his right arm and shoulder. Claimant alleged that he sustained an occupational disease, on or about November 3, 1997, resulting in surgery due to repetitive use of his right arm and shoulder while working for Employer. Claimant subsequently settled his claim with Employer based upon an approximate disability of 17.5% permanent partial disability of the right shoulder. However, Claimant proceeded with his claim against the Second Injury Fund.

On March 30, 2004, the ALJ denied Claimant's claim for permanent total disability benefits, but did award him permanent partial disability benefits. On November 2, 2004, the Commission unanimously affirmed the ALJ's award and decision, and incorporated it by reference into the final award. The Commission found, among other things, that: (1)

Claimant suffered a 17.5% permanent partial disability to his right shoulder as a result of his occupational injury; (2) Claimant had a pre-existing 75% permanent partial disability from his depression and a pre-existing 25% permanent partial disability from his left shoulder injury and surgery; and (3) Claimant's right shoulder injury was not a factor in causing the Claimant's permanent total disability. Claimant was awarded 59.79 weeks of permanent partial disability benefits to be paid in the amount of $16,646.73 by the Second Injury Fund. This appeal followed.

We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo.banc 2003). An award is not supported by competent and substantial evidence if it is contrary to the overwhelming weight of the evidence. *Id.*

Claimant's brief contains one point on appeal with three sub-points. We will address the first sub-point initially, and then address the second and third sub-points together.

In his first point on appeal, Claimant asserts the Commission erred in considering the exhibits containing reports written by Dr. Jay Liss ("Dr.Liss"), Claimant's psychiatrist, as evidence that Claimant's right shoulder injury was not a factor in causing Claimant's permanent and total disability. Pursuant to section 287.550 RSMo 2000,[1] "all proceedings before the commission ... shall be simple, informal and summary, and without regard to the technical rules of evidence ..." Section 287.550. Under the Workers' Compensation Act, substantial rights are to be en-

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

forced at the sacrifice of procedural rights. *Elking v. Deaconess Hosp.*, 996 S.W.2d 718, 719 (Mo.App. E.D.1999). Where no objection is made, hearsay testimony may be considered and, further, all probative evidence received without objection in a contested case must considered in administrative hearings. *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 736 (Mo.App. S.D. 2004).

The reports of Dr. Liss were exhibits attached to the deposition of Mr. James England ("England"). Claimant argues that the Commission could not consider the exhibits as expert testimony because the exhibits did not meet the requirements of section 490.065. Section 490.065 specifies under what conditions expert testimony is admissible.

In *Clark*, the report of Dr. Paul Toma ("Dr.Toma") was admitted into evidence as part of a deposition exhibit referred to in the deposition of another doctor. *See id.* at 736–37. The employer contended that Dr. Toma's report was not properly before the ALJ, because the report was unauthenticated hearsay. *Id.* at 736. However, the court of appeals in *Clark* found that Dr. Toma's report was properly before the ALJ for consideration, because the exhibit containing the report was admitted at the hearing with no objection from the Employer. *Id.* at 737.

Similarly, in this case, Claimant never made an objection asserting that the exhibits were inadmissible because they either were unauthenticated hearsay or did not comply with section 490.065. The only objection made by Claimant as to any of the reports of Dr. Liss' was related to a contention that it was not clear exactly what questions Dr. Liss was answering in a particular report. Therefore, the Commission did not err in considering as evidence the Dr. Liss exhibits attached to the England deposition. Sub-point denied.

■ In his second and third sub-points on appeal, Claimant contends the Commission erred in finding that Claimant's occupational injury to his right shoulder was not a factor in causing Claimant's permanent and total disability.

■ An employee with an occupational disease suffers a compensable injury when the occupational disease causes the employee to become disabled and unable to work. *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 228 (Mo.App. E.D.1988). In cases involving an occupational disease caused by repetitive motion, an employee is disabled and unable to work when the need for surgery is manifested. *Lorenz v. Sweetheart Cup Co., Inc.*, 60 S.W.3d 677, 681 (Mo.App. S.D.2001).

The Commission found that the right shoulder injury "was not [a] factor causing the claimant's permanent total disability, which his treating physicians attributed to the claimant's anxiety, depression, and heart disease." The Commission further found that the combination of Claimant's anxiety, depression, and heart condition rendered Claimant permanently and totally disabled in 1998, before Claimant had surgery on his right shoulder.

The disability leave applications signed by Claimant in 1997 and 1998 indicate that his inability to work was due to reasons other than his right shoulder. England, a rehabilitation counselor, conceded that it would not be unreasonable to conclude that Claimant could have been rendered permanently and totally disabled due either to the effects of his psychiatric problems alone, or due to the combination of his psychiatric and cardiovascular problems.

Furthermore, Claimant did not obtain surgery on his right shoulder until over two years after he permanently stopped working for Employer. There is evidence

that Claimant did not even inquire about the possibility of shoulder surgery until January of 2000, when he complained of a *recent* increase in pain, weakness, and discomfort in his right shoulder. According to Dr. Liss, Claimant was permanently and totally disabled well before the right shoulder surgery. Dr. Jerome Levy, a physician, admitted that he had no reason to doubt the accuracy of the opinions of Dr. Liss.

Therefore, based on the record as a whole, there was substantial evidence to support the Commission's finding that the occupational disease Claimant sustained to his right shoulder was not a factor in causing Claimant's permanent and total disability. Sub-points denied.

Based upon the foregoing, we affirm the final award of the Commission.

SHERRI B. SULLIVAN and BOOKER T. SHAW, JJ., concur.